## LIABILITY OF RAILWAY COMPANIES FOR THE ACTS OF THEIR POLICEMEN.

Common Pleas Court of Hamilton County.

GORDON STEINBERGER V THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY.

Decided, March, 1922.

*Police Officers—Those Employed by Railway Companies—Invested with the Same Duties and Charged with the Same Liability as Municipal Policemen—Liability of Officers of a Railway Company Distinguished from that of the Company Itself.*

Persons commissioned by the Governor to "act as policemen for and on the premises of such railroad or elsewhere, when directly in the discharge of their duties for such railroad," possess and exercise the powers and are subject to the liabilities, while in the discharge of the duties for which they were appointed, as members of the police department of a municipality. The relation of a railroad company to its policemen is the same as that of a municipality to policemen in its employ, and the test of liability of a railway company for an alleged wrongful arrest by one of its policemen is the same as that of a municipality for an arrest similarly made by police in its employ.

On motion of defendant for an instructed verdict.

STRUBLE, J.

The controlling fact in this case is that the officers making the arrest complained of were police officers duly commissioned as such by the Governor of the state of Ohio by authority of Section 9150-1, General Code.

Persons so commissioned are designated as "policemen" and are empowered "to act as policemen for and on the premises of such railroad or elsewhere, when directly in the discharge of their duties for such railroad," and they possess and exercise the powers and are subject to the liabilities of policemen of cities while discharging the duties for which they are appointed.

The relation of the railway company to such policemen is, therefore, the same as that of a municipality to its policemen, and the test of the liability of the railway company is, would a municipality have been liable under the facts of this case had the acts complained of been committed by its policemen.

Reference to fundamental principles will help in the solution of the problem before the court.

The powers of a municipality are generally classified as governmental and proprietary. In exercising governmental powers a municipality is acting as the agent of the state. The paramount duty of the state is to preserve the peace and good order of society and protect the persons and property of the people; and the state performs this duty in several ways—one by the delegation to municipalities of power to pass laws or ordinances which they enforce through police officers appointed for that purpose; and another by authorizing the Governor of the state to commission policemen for the purpose of protecting the property of railway companies. The state has other ways of performing this duty of protecting the lives and property of its citizens, but these are not necessary to the consideration of this motion.

The state is supreme and the sole judge of the ways and means of performing this duty of protecting the lives and property of the people, and the only remedy of the people for the neglect or failure of the state in the performance of its duty in this regard is political.

The state is the principal and the policemen, whether of the railway company or of the municipality, are the agents of the state while engaged in the enforcement of the laws for the protection of the lives and property of the people; and, of course, if there is any neglect or failure on the part of the state to perform this duty the state is not liable. "The King can do no wrong."

The general policy of governments everywhere is to withhold liability for failure to pass proper laws protecting the people and their persons and their property, or for laxity of enforcing those they do pass.

The proprietary powers of a municipality are entirely different. Here the municipality is acting for itself in the construction and maintenance of improvements for the accommodation and benefit of the public; such as streets, public buildings, parks, etc., and in carrying out these endeavors municipalities are liable the same as individuals.

The policemen of the defendant company like municipal policeman are individually liable for malfeasance, misfeasance or nonfeasance in office, but for these you cannot hold the railway company, a municipality, nor the state.

It is conceivable that a policeman may act for a railway company or municipality in a dual capacity; that is, as a policeman and as an agent in the execution of some of the proprietary powers. If he acts as agent, of course, the railway company or municipality is liable for his actions within the scope of his authority; but the fact that, at the time, he is a policeman is a mere incident and serves merely to muddy the water; and the railway company or a municipality may become liable by ratifying the actions of its agent. But I do not see how it is possible for a railway company or a municipality to ratify the actions of their policemen, exercising their powers as policemen, because they are then not agents of the railway company or of the municipality.

If the mayor of the city of Cincinnati or the chief of police or the president of a railway company or other officer orders a wrongful arrest by a policeman or participates therein he is liable individually and as principal, but the city or the railway company surely is not involved.

The plaintiff has two causes of action in his petition. In the first he complains that the policemen of the defendant company wrongfully arrested him and deprived him of his liberty for several hours, accused him of theft, injuring him in his credit and reputation; and in the second that defendant's policemen assaulted and beat him and caused his discharge by defendant.

These officers commissioned as policemen by the Governor in arresting plaintiff are presumed to have acted within their powers as such poliemen, and independent of this presumption their right to arrest the plaintiff is a matter of general law. If they saw the plaintiff in the actual commission of a crime or had reasonable ground to suspect him of having committed a crime, the law gives them all the right they had in the matter of arrest and the defendant company could not add to or take from this right.

It is apparent that in the act of arresting plaintiff they were

acting as policemen and if in arresting the plaintiff they used more force than was necessary, or if they slandered him or beat him they exceeded their powers and authority as policemen and for these wrongs they are individually responsible to plaintiff.

If it could be said that some official or employee of the defendant aided or abetted or procured these policemen to do these wrongs to plaintiff, then he himself would be liable as a principal or possibly jointly with them on the ground of a conspiracy to wrong plaintiff.

Plaintiff claims that the superintendent of terminals, an employee of the defendant company, discharged him by reason of his arrest and of the charge of theft by these policemen, and that this was a ratification of the acts of these policemen which makes the defendant liable to plaintiff; but the answer to this, in accordance with my previous reasoning, is that these policemen were acting at the time as public officers and as such were agents of the state, and right or wrong, executing the powers given them by the state, and in the opinion of the court such actions cannot be made the subject-matter of ratification.

In *Railway Company* v. *Fieback*, 87 O. S., 265, the court says, "Police officers by whomever appointed or elected are generally regarded as public or state officers deriving their authority from the sovereignty, for the purpose of enforcing the observance of the law; and for their malfeasance, misfeasance or nonfeasance in office the city is not responsible." The only logical inference to be drawn from the Fieback case is that the only basis of liability against the city or against the railway company is that of agency. So long as the powers executed by a policeman are such as are given him by virtue of his appointment as policeman, there can be no liability against the city or against a railway company for his actions while exercising these powers.

According to the testimony in this case the only actions of the officials of the defendant company harmful to the plaintiff was the discharge of the plaintiff as switchman for the defendant, and this was probably due entirely to his arrest and charge of theft by these policemen.

In an action against these policemen for malicious and false arrest, the discharge of plaintiff and his loss thereby would be a proper element of damages and this was the purpose of the allegation in plaintiff's petition.

The plaintiff had a contract of employment with the defendant and the defendant discharged him, and if by doing so defendant violated plaintiff's contract of employment the defendant would be liable for damages occasioned him thereby; but the act of the defendant in discharging the plaintiff cannot be construed as a ratification of the acts of these policemen while exercising their powers as policemen.

The conclusion of the court is that under the undisputed facts in this case the motion of defendant for an instructed verdict should be and it is granted.